1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMA A. HALL,

11           Plaintiff,                    No. CIV S-10-01152 JAM EFB PS

12       vs.

13   PLACER COUNTY SHERIFF'S
     DEPARTMENT; PLACER COUNTY
14   SHERIFF'S COUNCIL; OFFICER
     ZENDER, BADGE NO. 177;
15   and DOES 1-50,
                                           ORDER AND
16           Defendants.                   FINDINGS AND RECOMMENDATIONS
     _____/
17

18           This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to

19   Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Defendants

20   Placer County Sheriff's Department ("Sheriff's Department") and Placer County Sheriff's

21   Deputy Ryan Zender ("Zender") move to dismiss plaintiff's third amended complaint for failure

22   to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1]  For the reasons

23   _____

24         [1] Plaintiff includes Placer County Sheriff's Council ("Sheriff's Council") as a defendant
     for the first time in the third amended complaint.  *See* Third Am. Compl. ("TAC"), Dckt. No. 33,
25   ¶¶ 3, 19, 29, 36, 41, 48, 51-58, 61, 65.  The Sheriff's Council does not move to dismiss the
     complaint.  In fact, the only mention of plaintiff's addition of the Sheriff's Council by the
26   Sheriff's Department and Zender was as follows: "Defendants do not understand why plaintiff
     has attempted service on Placer County Sheriff's Council, who has not appeared in this case."

                                           1

1   set forth herein, it is recommended that the motion be granted in part and denied in part.

2   I.      BACKGROUND

3          This case concerns a search of plaintiff and his vehicle following a traffic stop.

4   Plaintiff's third amended complaint alleges the following claims for relief against all defendants:

5   (1) a claim under 42 U.S.C. § 1983 for violation of plaintiff's Fourth Amendment rights, Third

6   Am. Compl. ("TAC") ¶¶ 25-29; (2) racial profiling, in violation of California Penal Code section

7   13519.4, *id.* ¶¶ 30-36; (3) negligent infliction of emotional distress, *id.* ¶¶ 37-41; (4) invasion of

8   privacy, misuse of legal procedure, and negligence, *id.* ¶¶ 42-49; (6) a claim under 42 U.S.C. §

9   1983 for conspiracy,[2] *id.* ¶¶ 59-67; and (7) a claim for declaratory relief, *id.* ¶¶ 68-72.  Plaintiff

10  also alleges a claim against the Sheriff's Department and Sheriff's Council for unlawful and

11  unfair business practices in violation of California Business and Professions Code section 17200

12  (plaintiff's fifth claim for relief).  *Id.* ¶¶ 50-58.

13         Plaintiff alleges that on August 18, 2008, between 12:01 a.m. and 2:00 a.m., Zender

14  stopped plaintiff for a broken taillight violation, California Vehicle Code section 24252(a), while

15  plaintiff was driving in Citrus Heights, California.  *Id.* ¶ 12.  Plaintiff alleges that Zender ordered

16  plaintiff and his two passengers out of the vehicle and proceeded to perform a search without

17  consent, a warrant, or probable cause.  *Id.* ¶¶ 13-14.  Plaintiff alleges the scope of Zender's

18  search included the interior of the vehicle, the interior of the glove box, and the interior of a

19  zippered back pack located in the "box of the bed."  *Id.* ¶ 13.  Plaintiff alleges that the stop was

20  for the purpose of searching plaintiff and his occupants, and was based on plaintiff's race (as an

21  ————————————

22  Mot. to Dism., Dckt. No. 37-1 at 9.  Therefore, the Sheriff's Council is not addressed herein.
    However, the undersigned notes that it is unclear from the docket whether the Sheriff's Council
23  has been properly served and reminds plaintiff that Rule 4(m) sets forth a deadline for service of
    process and Rule 4(*l*) requires that proof of service be made to the court.  As set forth in Rule
24  4(m), a failure to timely serve a defendant may result in the dismissal of that defendant.

25         [2] Although the basis for plaintiff's conspiracy claim is unclear from the third amended
    complaint, in his opposition to the motion to dismiss, plaintiff addresses the conspiracy claim
26  under 42 U.S.C. § 1983.  *See* Pl.'s Opp'n, Dckt. No. 41 at 2, 14.  Therefore, the court assumes
    that plaintiff's conspiracy claim is brought under § 1983.

1   African American).  *Id.* ¶¶ 13, 17.  Plaintiff also alleges that he was subjected to a frisk and

2   patdown search by Zender, even though neither Zender, nor any of the other officers, held any

3   suspicion that any crime was being committed or that plaintiff was armed or dangerous.  *Id.*

4   ¶¶ 14, 16, 33, 44, 62.  According to plaintiff, nothing was found on any party during the search,

5   nor was anything found inside the vehicle and its contents.  *Id.* ¶ 14.

6       Plaintiff further asserts that two other Sheriff's Department patrol cars arrived at the

7   scene and "assisted, conspired, and aided and abetted and operated with Officer Zender in this

8   unconsented search." *Id.* ¶ 15.  Plaintiff alleges the stop lasted "well over one-half hour or

9   longer." *Id.* ¶ 16.  Plaintiff was issued a traffic citation which was eventually dismissed.  *Id.*

10  ¶ 22.  Plaintiff alleges that the Sheriff's Department and Sheriff's Council "seem to have a policy

11  and custom to allow police to violate constitutional rights of citizens," and that they "fail to

12  properly train [their] employees based on this policy and custom which in a relevant respect

13  evidences a 'deliberate indifference' to the rights of its inhabitants." *Id.* ¶ 19.

14  II.   <u>MOTION TO DISMISS</u>

15      The Sheriff's Department and Zender move to dismiss plaintiff's complaint pursuant to

16  Rule 12(b)(6), arguing that (1) plaintiff's § 1983 Fourth Amendment claim should be dismissed

17  because plaintiff failed to plead facts sufficient to state a claim for violation of his Fourth

18  Amendment rights, Zender is entitled to qualified immunity on that claim, and plaintiff failed to

19  name a proper entity for municipal liability purposes under § 1983; (2) plaintiff's § 1983

20  conspiracy claim should be dismissed since plaintiff failed to allege sufficient facts to support

21  that claim; and (3) plaintiff's racial profiling claim under California Penal Code section 13519.4

22  should be dismissed since that statute does not apply to the facts alleged in plaintiff's complaint.

23  *See generally* Mot. to Dism., Dckt. No. 37-1.  *Id.*  The motion does not specifically address

24  plaintiff's remaining state law claims, but contends that those claims should be dismissed

25  pursuant to 28 U.S.C. § 1367(c)(3) "in the absence of a viable federal claim." *Id.* at 12.

26  ////

A.      <u>Standards of Review</u>

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).  The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B.    Plaintiff's § 1983 Fourth Amendment Claim

#### 1.    Failure to Plead Sufficient Facts

The Sheriff's Department and Zender move to dismiss plaintiff's § 1983 action for violation of his Fourth Amendment rights, arguing that plaintiff failed to plead sufficient facts to support that claim since the search of plaintiff and his vehicle were lawful. Dckt. No. 37-1 at 4-7.

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law."[3] *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). "An intrusion by the police in the form of a search and seizure is arbitrary, and therefore 'unreasonable,' if not authorized by law." *Cohen v. Norris*, 300 F.2d 24, 31 (9th Cir. 1962). "The only intrusions by the police which are authorized are those: (1) which are made under a valid search warrant, incident to a valid arrest, or under exceptional circumstances

---

[3] The Sheriff's Department and Zender do not argue that plaintiff failed to properly allege that they acted under color of state law, and plaintiff's allegations, taken as true, are sufficient to establish that they acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) (a defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"). Plaintiff alleges Zender "is an Officer for the Placer County Sheriff's Department," and "[o]n August 18, 2008, Officer Zender of Placer County stopped [p]laintiff for alleged Vehicle Code violations, i.e. a broken taillight." TAC ¶¶ 4, 12. Plaintiff also alleges the "Placer County Sheriff's Department is a municipality for Placer County which transacts in police services and public duties for the inhabitants of Placer and surrounding Counties," and credits the officers' acts and omissions to the Sheriff's Department's failure to train and to its custom and practice of allowing officers to violate individuals' civil rights. *Id.* at ¶¶ 2, 19, 28.

5

1   which dispense with the need of a search warrant; and (2) where the actual purpose of the

2   officers in making the search is to ascertain whether articles which the officers have a right to

3   seize are on the person or premises being searched." *Id.* (internal citations omitted); *see also*

4   *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001).

5   a. <u>Search of Plaintiff</u>

6   Plaintiff contends Zender violated his constitutional rights by conducting a patdown

7   search of plaintiff, arguing that there was no basis for Zender to believe that plaintiff was armed

8   or dangerous, as required to justify the patdown.  TAC ¶¶ 16, 18, 62.

9   In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that in certain instances, an

10   investigatory stop (temporary detention) and frisk (patdown for weapons) may be conducted

11   without violating the Fourth Amendment's ban on unreasonable searches and seizures.

12   Specifically, the Court held that (1) the investigatory stop must be lawful, and (2) to proceed

13   from a stop to a frisk, the officer must reasonably suspect that the person stopped is armed and

14   dangerous.  *Id.*; *see also Arizona v. Johnson*, 555 U.S. 323, 326 (2009) ("To justify a patdown of

15   the driver or a passenger during a traffic stop . . . the police must harbor reasonable suspicion

16   that the person subjected to the frisk is armed and dangerous."); *Pennsylvania v. Mimms*, 434

17   U.S. 106, 111-12 (1997) (applying the *Terry* standard to traffic stop patdowns, the officer must

18   be able to point to particularized facts from which he reasonably inferred plaintiff was armed and

19   dangerous).  "This frisk is limited to a patdown of the exterior clothing."  *United States v.*

20   *Johnson*, 581 F.3d 994, 999 (9th Cir. 2009).  "Nothing in *Terry* can be understood to allow a

21   generalized 'cursory search for weapons' or indeed, any search whatever for anything but

22   weapons.  The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less

23   than reasonable belief or suspicion directed at the person to be frisked . . . ."  *Ybarra v. Illinois*,

24   444 U.S. 85, 93-94 (1979).

25   Here, plaintiff does not allege that the stop was unlawful.  In fact, plaintiff concedes that

26   there was a hole in his taillight.  TAC ¶ 12.  However, plaintiff contends that the subsequent

6

1   patdown search of plaintiff was unlawful since Zender did not have reasonable suspicion that

2   plaintiff was armed and dangerous.

3          To determine whether reasonable suspicion existed to support a patdown search in the

4   context of a lawful investigatory stop, the court considers the totality of the circumstances

5   surrounding the stop.  *United States v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010).  "A wide

6   variety of factors support a reasonable belief that an individual is armed and dangerous,"

7   including "an officer's observation of a visible bulge in an individual's clothing; sudden

8   movements or repeated attempts to reach for an object not immediately visible; and the nature of

9   the suspected crime."  *Ramirez v. City of Buena Park,* 560 F.3d 1012, 1022 (9th Cir. 2009)

10  (internal citations omitted).  "However, facts merely establishing that *if* an individual were

11  armed he would be dangerous are insufficient if there was no reason to believe that the

12  individual actually was armed."  *Id.*

13         Here, construing the allegations in a light most favorable to plaintiff, Zender lacked a

14  reasonable suspicion to believe plaintiff was, or even might be, armed and dangerous.  Plaintiff

15  alleges "no officers, including deputy Zender, held a suspicion that any crime was being

16  committed to request a search and frisk and patdown," and "nothing indicated any possible

17  possession of any weapons or criminal activities to warrant the frisk or patdown in the interest of

18  officer safety."  TAC ¶ 18.  Plaintiff alleges Zender ordered plaintiff and his two passengers out

19  of the vehicle and further alleges two additional patrol cars arrived at the scene of the stop to

20  assist Zender.  *Id.* ¶¶ 13, 15.  Plaintiff alleges the officers lacked the requisite suspicion to

21  conduct a *Terry* patdown of plaintiff, stating "[n]either plaintiff[,] nor any passenger showed any

22  signs that warranted these acts and omissions."  *Id.* ¶ 18.  From plaintiff's allegations, it appears

23  plaintiff was cooperative and complied with Zender's requests.

24         Moreover, nothing in the Sheriff's Department and Zender's opposition suggests, let

25  alone substantiates, that Zender or any of the other officers had a reasonable suspicion plaintiff

26  was, or even might be, armed and dangerous.  There are no facts suggesting that there was a

1    visible bulge in the plaintiff's clothing, or that plaintiff made any sudden movements or

2    attempted to reach for an object.  Nor does the reason for the stop, a broken taillight, give rise to

3    the suspicion of criminal activity.  Although the opposition states that "Zender has additional

4    information pertaining to this stop that plaintiff has not alleged pertaining to [his] unusual

5    contact with another vehicle in a parking lot shortly before the stop, and his failure to produce

6    his registration and proof of insurance during the stop," such assertions, which are not properly

7    before this court on the present Rule 12(b)(6) motion, do not establish that Zender had a

8    reasonable suspicion that plaintiff was armed and dangerous, so as to justify the patdown search

9    of plaintiff.  Dckt. No. 37-1 at 5.

10          Accordingly, the argument that plaintiff failed to plead sufficient facts to support a

11   § 1983 claim based on the patdown of plaintiff fails, and the motion to dismiss plaintiff's § 1983

12   claim on that ground must be denied.

13                        b.  <u>Search of Plaintiff's Vehicle</u>

14          Plaintiff also contends that Zender violated his Fourth Amendment rights by conducting a

15   search of his vehicle.  TAC ¶¶ 25-29.  In *Knowles v. Iowa*, the Supreme Court held that a traffic

16   stop alone does not authorize an officer to conduct a full search of the car.  525 U.S. 113, 114

17   (1998).  The court explained that the historic rationale supporting a search incident to an arrest –

18   officer safety and preservation of evidence – did not apply in a search incident to citation cases.

19   *Id.* at 116-17.  The court elaborated, noting that "[t]he threat to officer safety from issuing a

20   traffic citation . . .  is a good deal less than in the case of a custodial arrest," and "while the

21   concern for officer safety in this context may justify the 'minimal' additional intrusion of

22   ordering a driver and passengers out of the car, it does not by itself justify the often considerably

23   greater intrusion attending a full field-type search."  *Id.* at 117.  Therefore, the court declined to

24   extend the bright-line rule authorizing searches incident to arrest to search incident to citation

25   cases where "the concern for officer safety is not present to the same extent and the concern for

26   destruction of evidence is not present at all."  *Id.* at 119.

On the other hand, where a person is arrested as the result of a traffic stop, the officer may only conduct a vehicle search "when the arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense or arrest." *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 1721 (2009).  Additionally, an officer may search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons," *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), and if there is probable cause to believe a vehicle contains evidence of criminal activity, an officer may search any area of the vehicle in which the evidence might be found, *United States v. Ross*, 456 U.S. 798, 820-21 (1982).

Here, plaintiff has plead sufficient facts to support a § 1983 claim for unreasonable search of his vehicle.  Plaintiff alleges Zender stopped plaintiff for a vehicle code violation for a broken taillight and did not arrest plaintiff.  TAC ¶¶ 13, 26.  Plaintiff alleges that Zender ordered plaintiff and his passengers out of the car and then conducted a full search of the interior of his vehicle, including plaintiff's glove box and the interior of a zipped backpack contained in the trunk located on the bed of his truck.  *Id.* ¶ 13.  Plaintiff alleges Zender did not have consent nor probable cause to conduct the search and a warrant was not issued to authorize the search.  *Id.* ¶ 14.  Plaintiff alleges the traffic infraction did not give the officers any reason to believe additional criminal activity was afoot to justify the vehicle search.  *Id.*  Plaintiff alleges Zender and the other officers went beyond their lawful duties by searching the car and therefore violated plaintiff's constitutional rights.  *Id.* ¶¶ 28-29.

As with plaintiff's allegations regarding the patdown search, nothing in the Sheriff's Department and Zender's opposition suggests that Zender or any of the other officers had a valid basis for searching plaintiff's vehicle.  Accordingly, the argument that plaintiff failed to plead sufficient facts to support a § 1983 claim based on the search of plaintiff's vehicle fails, and the motion to dismiss plaintiff's § 1983 claim on that ground must be denied.

c. <u>Searches Not Conducted Incident to Arrest</u>

The Sheriff's Department and Zender argue that the detention following plaintiff's traffic stop "was essentially an arrest" justified by *Atwater v. City of Lago Vista*, 532 U.S. 318, 355 (2001), and *Virginia v. Moore*, 553 U.S. 164 (2008),[4] and argue that therefore, the searches of plaintiff and his vehicle incident to that arrest were legally justified.  Dckt. 37-1 at 6.  They argue that because they had probable cause to arrest plaintiff for his traffic infraction under *Atwater* and *Moore*, the searches of plaintiff and his vehicle were constitutional.[5]

However, plaintiff specifically alleges that he was not arrested as a result of the infraction, TAC ¶ 26, and the U.S. Court of Appeals for the Ninth Circuit has "decline[d] to extend the exception to warrant requirements for seizures incident to arrest to instances in which a police officer seizes evidence of a crime, but makes no arrest."  *Menotti v. City of Seattle*, 409 F.3d 1113, 1153 (9th Cir. 2005); *Bashkin v. San Diego Cnty.*, 2010 WL 2010853, at *9 (S.D. Cal. May 10, 2010) (denying defendant's motion for summary judgment on plaintiff's unlawful search claim because even though defendants had probable cause to arrest and subsequently conducted a search, no formal arrest was made); *United States v. King*, 560 F. Supp.2d 906, 919 (N.D. Cal. May 28, 2008) (finding the government's argument that the search of the car was incident to the defendant's arrest unpersuasive since no arrest had been made at the time of search and the discovery of the defendant's gun); *Fitzgerald v. City of L.A.*, 485 F. Supp.2d 1137, 1149 (C.D. Cal. Apr. 27, 2007) (finding defendants could not justify the search of the

---

[4] In *Atwater*, 532 U.S. 318 (2001), the Supreme Court held that an officer who observes criminal conduct may arrest the offender without a warrant, even if the offense carries only a minor penalty.  The Court held a custodial arrest for a first-time seat belt violation, which included taking the defendant back to the police station and detaining her there for an hour, was not an unreasonable seizure under the Fourth Amendment, even though the violation was only a misdemeanor under the relevant state law.  *Id.* at 323.  In *Moore,* 552 U.S. 168 (2008), the Court affirmed *Atwater* and found that an officer may constitutionally arrest an individual for a minor misdemeanor.

[5] In so arguing, the Sheriff's Department and Zender essentially concede that the only valid basis for each search was as a search incident to arrest.

1   plaintiff as a search incident to arrest because no arrest was made).

2          The only case the Sheriff's Department and Zender cite for the proposition that because

3   they *could have* arrested plaintiff for his traffic infraction the searches of plaintiff and his vehicle

4   were constitutional is *Evans v. Solomon*, 681 F. Supp.2d 233 (E.D.N.Y. Jan. 14, 2010), which is

5   both distinguishable and unpersuasive in light of the Ninth Circuit authority discussed above.  In

6   *Evans*, a park police officer stopped the plaintiff for a red light violation.  *Id.* at 238.  After being

7   asked to step out of the vehicle, the plaintiff refused to furnish his driver's license to the officer.

8   *Id.*  After plaintiff's third refusal to produce his license, the officer asked plaintiff, "Do you

9   realize we could arrest [you]?"  *Id.*  The officer subsequently pinned plaintiff to the vehicle and

10  removed the wallet out of plaintiff's pants pocket in order to obtain plaintiff's driver's license.

11  *Id.* at 238-29.  The court upheld the search of plaintiff as a "search incident to an arrest."  *Id.* at

12  248.  The court explained the officer had probable cause to arrest plaintiff either on the basis of

13  the traffic infraction or plaintiff's refusal to furnish his driver's license.  *Id.* (citing to New York

14  state law which authorized arrest on either ground).  The court noted that once the officer

15  acquired the authority to arrest plaintiff, he was permitted to conduct a full search incident to the

16  arrest.  *Id.* at 249.  The court explained that under Second Circuit precedent, as long as probable

17  cause to arrest existed at the time the officer conducted the search, whether the search occurred

18  before or after the formal arrest did not alter its constitutionality.  *Id.*  Therefore, the court

19  specifically held that the Fourth Amendment permitted the officer to search plaintiff's pocket for

20  identification once he established probable cause to arrest him.

21          Unlike *Evans*, Zender's searches of plaintiff and his vehicle were not justified by the

22  traditional rationales supporting searches incident to arrest.  As noted above, construing the

23  allegations in a light most favorable to plaintiff, Zender and the other officers lacked a

24  reasonable suspicion to believe plaintiff was, or even might be, armed and dangerous.

25  Additionally, the Supreme Court has admonished that where a person is arrested as the result of

26  a traffic stop, the officer may conduct a vehicle search "only when the arrestee is within reaching

distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense or arrest." *Gant*, 129 S.Ct. at 1723.  Searches that do not implicate either of the historic justifications–officer safety and evidence preservation–do not trigger the exception and are therefore unlawful.  *Id.*  Here, the facts alleged in the complaint do not suggest any circumstance which would justify Zender's vehicle search.[6]  Zender pulled plaintiff over for a routine traffic offense, a broken taillight, for which no evidence could be found in the vehicle.  TAC ¶¶ 12, 22; *Gant*, 129 S.Ct. at 1719 ("In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.").  Additionally, Zender took safety precautions by lawfully ordering plaintiff and his passengers out of the car.  TAC ¶ 13.

Further, to the extent the Sheriff's Department and Zender contend that the detention was "essentially an arrest," they have not established that such arrest was proper.[7]  While their argument rests on the assumption that Zender could have arrested plaintiff for the traffic infraction, unlike *Atwater* and *Moore,* they do not provide or cite to any California statute authorizing arrest for minor traffic infractions such as a broken taillight.  Accordingly, the argument that plaintiff's Fourth Amendment claim should be dismissed because the searches were justified must fail.

## 2. Qualified Immunity

Zender also moves to dismiss plaintiff's claim Fourth Amendment § 1983 claim on the basis of qualified immunity.  Specifically, he argues that because the Ninth Circuit has not clarified the effect of *Atwater* on traffic stops in California, an objectively reasonable officer could have believed that an arrest of plaintiff was constitutionally lawful and that therefore the

---

[6] Zender may dispute the version of facts set out in the complaint, but under the standards applicable to this motion the facts alleged in the complaint must be taken as true.

[7] There is nothing alleged in, attached to, or is part of the complaint which would establish that, and this is not a Rule 56 motion in which Zender may submit matters extrinsic to the complaint.  *See* Fed. R. Civ. P. 12(d)

1    searches of plaintiff and his vehicle incident to arrest were lawful.  Dckt. No. 37-1 at 7-9.

2    Zender argues that even if he was mistaken as to what the law required under the facts alleged by

3    plaintiff, because his mistake was reasonable, he is entitled to qualified immunity.  *Id.* at 9.

4          In analyzing qualified immunity, which is "an entitlement not to stand trial or face the

5    other burdens of litigation," the court employs a two-prong analysis.  *Saucier v. Katz*, 533 U.S.

6    194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).  "An

7    officer will be denied qualified immunity in a § 1983 action only if (1) the facts alleged, taken in

8    the light most favorable to the party asserting injury, show that the officer's conduct violated a

9    constitutional right, and (2) the right at issue was clearly established at the time of the incident

10   such that a reasonable officer would have understood her conduct to be unlawful in that

11   situation."  *Torres v. City of Madera*, 2011 WL 3659355, at *3 (citing *Saucier*, 533 U.S. at

12   201–02; *Liberal v. Estrada*, 632 F.3d 1064, 1076 (9th Cir. 2011)).

13         Whether the defendant violated a constitutional right and whether the right was clearly

14   established at the time of the violation are pure legal questions for the court.  *See Phillips v.*

15   *Hust*, 477 F.3d 1070, 1079 (9th Cir. 2007).  However, even where a right was clearly

16   established, the question remains whether the defendant's actions violated such right.  That

17   question may or may not turn on facts which are in dispute.

18         When identifying the right that was allegedly violated, a court must define the right more

19   narrowly than the constitutional provision guaranteeing the right, but more broadly than all of

20   the factual circumstances surrounding the alleged violation.  *See Watkins v. City of Oakland,*

21   *Cal*., 145 F.3d 1087, 1092-93 (9th Cir. 1998).  When determining whether the right was clearly

22   established at the time of the violation, the inquiry must be "undertaken in light of the specific

23   context of the case."  *Saucier*, 533 U.S. at 201.  To be clearly established, "[t]he contours of the

24   right must be sufficiently clear that a reasonable official would understand that what [the

25   official] is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

26   However, to conclude that the right is clearly established, the court need not identify an identical

1    prior action. *Id.* at 640.  Absent binding precedent, the court should consider all relevant

2    precedents, including decisions from the Supreme Court, all federal circuits, federal district

3    courts, and state courts; in addition, the court should consider the likelihood that the Supreme

4    Court or the Ninth Circuit would decide the issue in favor of the person asserting the right.  *See*

5    *Elder v. Holloway*, 510 U.S. 510, 512, 516 (1994).

6           As noted above, when accepting plaintiff's allegations as true and construing the third

7    amended complaint in plaintiff's favor, as required when deciding a Rule 12(b)(6) motion, the

8    patdown search of plaintiff and the search of his vehicle violated plaintiff's Fourth Amendment

9    rights.  Therefore, the court must turn to the second prong of the qualified immunity analysis:

10   whether the rights at issue – to be free from an unreasonable patdown search and to be free from

11   an unreasonable vehicle search – were clearly established at the time of the incident such that a

12   reasonable officer would have understood his conduct to be unlawful in that situation.

13          At the time of the incident in August 2008, it was clearly established that police officers

14   cannot search a person unless the officer reasonably suspects that the person stopped is armed

15   and dangerous.  *Knowles*, 525 U.S. at 119; *Mimms*, 434 U.S. at 112.  It was also clearly

16   established that police officers cannot conduct a full search of a vehicle incident to a traffic

17   citation.  *Knowles*, 525 U.S. at 114.  Although Zender argues that the Ninth Circuit has not

18   clarified the effect of *Atwater* on traffic stops in California, and that therefore an objectively

19   reasonable officer could have believed an arrest of plaintiff was constitutionally lawful and,

20   therefore, the searches of plaintiff and his vehicle incident to arrest lawful,[8] the Ninth Circuit in

21

22          [8] Zender relies on *Yezek v. CHP*, 2007 WL 61887 (N.D. Cal. Jan. 8, 2007), for his
     argument that the Ninth Circuit has not addressed how *Atwater* should be applied to traffic stops
23   in California.  In *Yezek*, the plaintiff brought a § 1983 claim against a California Highway Patrol
     officer, alleging the officer violated his Fourth Amendment rights when he detained the plaintiff
24   (who was wearing attire reflecting membership in the Hell's Angel's) on a traffic stop in order to
     photograph him.  2007 WL 61887, at *1.  The defendant sought summary judgment on the basis
25   that he did not violate the Fourth Amendment by photographing the plaintiff because, under
     *Atwater*, he could have arrested the plaintiff and photographing the plaintiff was less intrusive
26   than arresting him.  *Id.*  The court held that *Atwater* did not apply because the relevant inquiry
     was what the defendant actually did, not what he could have done.  The court instead addressed

1  *Menotti v. City of Seattle* specifically "decline[d] to extend the exception to warrant requirements

2  for seizures incident to arrest to instances in which a police officer seizes evidence of a crime,

3  but makes no arrest."  409 F.3d at 1153; *see also Bashkin v. San Diego County*, 2010 WL

4  2010853, at *9 ("Accordingly, at least as of 2005, it was clearly established that, even where

5  there is probable cause to arrest, a search and seizure 'incident to arrest' may not be conducted

6  when no formal arrest occurs.").  Contrary to Zender's characterization of the facts set out in the

7  complaint, plaintiff was not arrested.  Nor has Zender provided or cited to any California statute

8  authorizing arrest for minor traffic infractions such as a broken taillight, unlike *Atwater* and

9  *Moore.*  Therefore, Zender has not shown that he reasonably believed the searches of plaintiff or

10 his vehicle were lawful searches incident to arrest.  Accordingly, Zender's motion to dismiss

11 plaintiff's § 1983 claim on qualified immunity grounds must be denied.

12              3. Municipal Liability Under *Monell*

13         The Sheriff's Department and Zender also move to dismiss plaintiff's § 1983 municipal

14 liability claim, arguing that plaintiff failed to name a proper entity for municipal liability

15 purposes.  Dckt. No. 37-1 at 9.  They argue that while Zender is a "person" for purposes of

16 individual liability, the Sheriff's Department "is merely a department and therefore not a

17 'person' that can be sued under a *Monell* theory."  *Id.*

18         Under § 1983, a plaintiff may pursue claims against "persons" acting under the color of

19 state law who deprive an individual of federal constitutional rights or limited federal statutory

20 rights.  42 U.S.C. § 1983; *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  The term "persons"

21

22 the question under the case law that requires *Terry* stops to be reasonable in duration.  *Id.* at *8.
   Although the court concluded that triable issues of fact remained on that issue, it concluded the

23 officer was entitled to qualified immunity because he could have reasonably believed his acts
   were constitutional under *Atwater*.  The court noted that "*Atwater* has altered the legal landscape

24 to some degree," and found "it was not clearly established that, in the course of a traffic stop
   based on probable cause, [the officer] could not prolong the stop to take the photographs, and

25 [the officer] could have reasonably believed the photographs were lawful."  *Id.*  However, unlike
   the plaintiff in *Yezek*, plaintiff does not challenge the length of his stop; rather, he challenges the

26 searches incident to that stop.  As discussed above, the law relating to such searches was clearly
   established at the time of the incident.

encompasses state and local officials sued in their individual capacities, private individuals, and entities which act under the color of state law and local governmental entities. *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. June 17, 1996).  In *Monell*, the Supreme Court held that in certain circumstances municipalities may be held liable as "persons" under 42 U.S.C. § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  However, the term "person" in this context does not encompass municipal departments.  *See Vance*, 928 F. Supp. at 995-96 (stating that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality," and dismissing the Santa Clara Department of Corrections from the action); *Pellum v. Fresno Police Dept.,* 2011 WL 350155, at *2 (E.D. Cal. Feb. 2, 2011) (finding the Fresno Police Department not a proper defendant under § 1983); *Jewett v. City of Sacramento Fire Dep't*, 2010 WL 3212774, at *2 (E.D. Cal. Aug. 12, 2010) (finding fire department not a "person" under § 1983 and dismissing suit against it); *Wade v. Fresno Police Dep't*, 2010 WL 2353525, at *4 (E.D. Cal. June 9, 2010) (finding police department is not a "person" under § 1983); *Morris v. State Bar of Cal.*, 2010 WL 966423, at *2-3 (E.D. Cal. Mar. 11, 2010) (finding a fire department is a municipal department and therefore not a "person" under § 1983); *Sanders v. Aranas*, 2008 WL 268972, at *2-3 (E.D. Cal. Jan. 29, 2008) (finding Fresno Police Department improper defendant because it is a subdivision of the City of Fresno); *Brockmeier v. Solano Cnty. Sheriff's Dep't*, 2006 WL 3760276, at *4 (E.D. Cal. Dec. 18, 2006) (dismissing Sheriff's Department as an improperly named defendant for purposes of § 1983).

The Sheriff's Department is a municipal department of Placer County and Zender is an individual employee of the Sheriff's Department.  Therefore, plaintiff has not named a proper defendant for purposes of *Monell* liability on his § 1983 claims.  Accordingly, such claims should be dismissed with leave to amend, to the extent that plaintiff can name a proper defendant for those claims.

In sum, Zender's motion to dismiss plaintiff's § 1983 Fourth Amendment individual liability claims against him should be denied, the Sheriff's Department's motion to dismiss

1  plaintiff's § 1983 Fourth Amendment claims against it should be granted, and plaintiff's § 1983

2  municipal liability claims should be dismissed with leave to amend.

3        C.    <u>Plaintiff's § 1983 Conspiracy Claim</u>

4        Through his third amended complaint, plaintiff alleges a vast conspiracy among all the

5  defendants to violate plaintiff's constitutional rights under the Fourth and Fourteenth

6  Amendments.  TAC ¶¶ 62-65.  The Sheriff's Department and Zender move to dismiss that claim

7  for failure to allege sufficient facts to support a conspiracy theory.  Dckt. No. 37-1 at 2.

8        As noted above, although the basis for plaintiff's conspiracy claim is unclear from the

9  third amended complaint, in his opposition to the motion to dismiss, plaintiff addresses the

10  conspiracy claim under 42 U.S.C. § 1983.  Dckt. No. 41 at 2, 14.  Therefore, the court assumes

11  that plaintiff's conspiracy claim is brought under § 1983.

12        A claim for conspiracy under § 1983 requires proof of "'an agreement or meeting of the

13  minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001)

14  (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.

15  1989) (citation omitted)), and "'an actual deprivation of constitutional rights,'" *Hart v. Parks*,

16  450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Okla.*, 866 F.2d

17  1121, 1126 (9th Cir. 1989)).  While it is not necessary to prove each participant in a conspiracy

18  know the exact parameters of the plan, they must at least share a general conspiratorial objective.

19  *Woodrum*, 866 F.2d at 1126; *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983); *Franklin*, 312

20  F.3d at 441 (each participant must at least share the common objective of the conspiracy)

21  (quoting *United Steel Workers*, 865 F.2d at 1541).  Vague and conclusory allegations with no

22  supporting factual averments are insufficient to support a claim under § 1983.  *Woodrum*, 866

23  F.2d at 1126; *Aldabe v. Aldabe*, 616 F.2d 1089, 1090 (9th Cir. 1980); *Lockry v. Kayfetz*, 587 F.

24  Supp. 631, 639 (N.D. Cal. 1984) (allegations of conspiracy must be supported by material facts,

25  not merely conclusory statements).

26  ////

1       Here, plaintiff's § 1983 conspiracy claim must be dismissed.  Plaintiff has only made

2  vague and conclusory allegations of conspiracy and has failed to support these allegations with

3  any factual assertions.  Plaintiff alleges that Zender and other officers "knowingly and willingly

4  conspired and agreed among themselves to violate the constitutional and statutory protections

5  and did perform an unlawful, unconstitutional, and wrongful search, pat/frisk, of [p]laintiff, his

6  passengers, and [p]laintiff's vehicle beyond a simple Terry stop and without reasonable

7  suspicion of any crime."  TAC ¶ 62.  Plaintiff further alleges that "[d]efendants Sheriff's

8  Department and Council furthered the conspiracy by cooperation with Officer Zender and each

9  other officer, and lent aid and encouragement to or ratified and adopted the acts of the Officer

10  defendants, in that they afford a policy, custom, or procedure that allows the unconstitutional and

11  unlawful acts and omissions of their employee [o]fficers . . . ."  *Id.* ¶ 65.  However, plaintiff's

12  conclusory allegations that Zender and the other officers "conspired" does not support a claim

13  for a violation of his constitutional rights under § 1983.  Plaintiff fails to explain how Zender and

14  the other officers were part of this conspiracy or shared a general conspiratorial objective.

15  Plaintiff merely alleges that "two other patrol vehicles came to the scene and assisted, conspired,

16  aided and abetted and operated with Officer Zender in this unconsented search and at no point

17  did any other officer explain that Officer Zender was exceeding the scope of the Terry stop by

18  searching the glove compartment and the interior of the backpack."  *Id.* ¶ 15.  The presence of

19  the additional officers and their failure to interrupt Zender's search does not establish "an

20  agreement or meeting of the minds [of the collective group of officers] to violate [plaintiff's]

21  constitutional rights."

22       Because plaintiff offers no facts to support a finding that defendants engaged in any sort

23  of conspiracy, plaintiff's § 1983 conspiracy claim must be dismissed.  Although it appears

24  unlikely, to the extent plaintiff can allege specific facts supporting a conspiracy claim, plaintiff

25  should be granted leave to amend to do so.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir.

26  2000) (en banc) (Unless it is clear that no amendment can cure its defects, a pro se litigant is

1   entitled to notice and an opportunity to amend the complaint before dismissal).

2       D.      Violation of California Penal Code Section 13519.4

3       The Sheriff's Department and Zender also move to dismiss plaintiff's claim for racial

4   profiling in violation of California Penal Code section 13519.4, arguing that plaintiff's

5   allegations do not support a claim for racial profiling because plaintiff concedes he was stopped

6   for a broken taillight violation.  Dckt. No. 37-1 at 11.

7       California Penal Code section 13519.4(e) defines racial profiling as "the practice of

8   detaining a suspect based on a broad set of criteria which casts suspicion on an entire class of

9   people without any individualized suspicion of the particular person being stopped."  Cal. Pen.

10  Code § 13519.4(e).  The statute also prohibits law enforcement officers from engaging in racial

11  profiling.  *Id.* § 13519.4(f) ("Law enforcement officer shall not engage in racial profiling.").  The

12  California Supreme Court has held, however, that an officer has not violated Penal Code section

13  13519.4 where the officer has probable cause to stop a vehicle for a traffic violation.  *See People*

14  *v. Lomax*, 49 Cal. 4th 530, 563 (2010) (in detaining a driver and passenger to investigate whether

15  they were involved in a robbery-murder after a traffic stop for an illegal lane change, where the

16  officer had probable cause to stop defendants' vehicle when it made the illegal lane change, the

17  police officer did not violate the Penal Code section 13519.4 which directs law enforcement

18  officers to refrain from racial profiling).

19      Here, there is no dispute that Zender had probable cause to stop plaintiff's vehicle for the

20  traffic infraction.  *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter

21  the decision to stop an automobile is reasonable where the police have probable cause to believe

22  that a traffic violation has occurred.").  If there is a legitimate reason to stop, the subjective

23  motivation of the officer is irrelevant.  *Id.*  Although plaintiff alleges Zender stopped plaintiff

24  solely because he is black, plaintiff concedes he had a broken taillight and his initial stop was for

25  the traffic infraction.  TAC ¶¶ 12-13.  Thus, because there was probable cause to stop plaintiff's

26  vehicle for the traffic infraction for a broken taillight, plaintiff has not plead facts sufficient to

support a claim for racial profiling under Penal Code section 13519.4.  Accordingly, plaintiff's

claim must be dismissed.  Because amendment would be futile, the dismissal should be without

leave to amend.

        E.    <u>Remaining State Law Claims</u>

        Because plaintiff's § 1983 Fourth Amendment individual liability claims against Zender

are not dismissed herein, the Sheriff's Department and Zender's request that plaintiff's

remaining supplemental state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3) must

be denied.

III.    <u>CONCLUSION</u>

        For the foregoing reasons, IT IS HEREBY ORDERED that the status (pretrial

scheduling) conference currently set for hearing on December 28, 2011, is vacated.[9]

        IT IS FURTHER RECOMMENDED that:

        1.  The Sheriff's Department and Zender's motion to dismiss, Dckt. No. 37-1, be granted

in part and denied in part, as follows:

        a.  Zender's motion to dismiss plaintiff's § 1983 Fourth Amendment individual

liability claims against him be denied;

        b.  The Sheriff's Department's motion to dismiss plaintiff's § 1983 Fourth

Amendment claims against it be granted, and plaintiff's § 1983 municipal liability claims be

dismissed with leave to amend;

        c.  The Sheriff's Department and Zender's motion to dismiss plaintiff's

conspiracy claim be granted with leave to amend;

        d.  The Sheriff's Department and Zender's motion to dismiss plaintiff's racial

profiling claim be granted without leave to amend; and

---

[9] As a result, the parties are not required to submit status reports as provided in the February 23 and May 27, 2011 orders.  *See* Dckt. Nos. 3, 17.  However, if the recommendation of dismissal herein is not adopted by the district judge, the undersigned will reschedule the status conference and require the parties to submit status reports.

1    e.  The Sheriff's Department and Zender's motion to dismiss plaintiff's remaining

2    state law claims under 28 U.S.C. § 1367 be denied.

3    2.  The parties be instructed as follows:

4    a.  If plaintiff seeks to amend his complaint to attempt to state a claim for

5    municipal liability under § 1983 and/or to attempt to state a claim for conspiracy, as provided

6    herein, any such amended complaint shall be filed within thirty days of any order adopting these

7    findings and recommendations and shall be labeled "Fourth Amended Complaint."

8    b.  If plaintiff elects to file a fourth amended complaint, the Sheriff's Department

9    and Zender shall file a response thereto within fourteen days from the date such complaint is

10   filed, and if plaintiff does not elect to file a fourth amended complaint, they shall file an answer

11   to the third amended complaint within fourteen days from the date plaintiff's deadline for filing a

12   fourth amended complaint expires.

13   These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

18   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

19   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

20   DATED:  November 30, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE